[Cite as *Gray v. Cincinnati Children's Hosp. Med. Ctr.*, 2024-Ohio-3168.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| CHAEFONE GRAY, Individually, and as Administrator for the Estate of Dante Craig, Deceased, | : | APPEAL NO. C-240103<br>TRIAL NO. A-2300352 |
|  | : |  |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
|  | : |  |
| vs. | : |  |
|  | : |  |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : |  |
|  | : |  |
| DR. BETH A. RYMESKI, | : |  |
|  | : |  |
| DR. CHRISTINA FENG, | : |  |
|  | : |  |
| DR. IRENE LIM-BEUTEL, | : |  |
|  | : |  |
| DR. GRACE MARTIN, | : |  |
|  | : |  |
| DR. NELSON ROSEN, | : |  |
|  | : |  |
| DR. TIMOTHY DRIBIN, | : |  |
|  | : |  |
| DR. ANDREW COX, | : |  |
|  | : |  |
| DR. MARIA ALONSO, | : |  |
|  | : |  |
| DR. BRANDON COLVIN, | : |  |
| and | : |  |
| DR. HEATHER NOLAN, | : |  |
| Defendants-Appellees, | : |  |
| and | : |  |
| JOHN DOES and JANE DOES, | : |  |
| Defendants. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 21, 2024

*Statman Harris, LLC* and *Alan J. Statman*, for Plaintiff-Appellant,

*Dinsmore & Shohl, LLP*, *Allison G. Knerr* and *J. David Brittingham*, for Defendant-Appellee Cincinnati Children's Hospital Medical Center,

*Bonezzi Switzer Polito & Hupp Co., LPA*, *Paul W. McCartney* and *Thomas F. Glassman*, for Defendant-Appellees Dr. Beth A. Rymeski, Dr. Christina Feng, Dr. Irene Lim-Beutel, Dr. Nelson Rosen, Dr. Timothy Dribin, Dr. Andrew Cox, Dr. Maria Alonso, Dr. Brandon Colvin, and Dr. Heather Nolan,

*Calderhead, Lockemeyer & Peschke* and *Bill J. Paliobeis*, for Defendant-Appellee Dr. Grace Martin.

**KINSLEY, Judge.**

{¶1} This is an appeal from an award of summary judgment in favor of a hospital and members of its team of physicians following the death of a child-patient. Plaintiff-appellant Chaefone Gray, individually and as an administrator of the child's estate, initiated this medical malpractice action in the wake of the child's passing. Ohio law, however, strictly circumscribes the requirements for sustaining this type of lawsuit. Gray's failure to timely support her claims with expert testimony ultimately meant she could not prevail on those claims. We therefore affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶2} The complaint alleges that, on or about August 27, 2018, the child underwent an ileostomy closure procedure at Cincinnati Children's Hospital Medical Center ("CCHMC"). According to the complaint, the child's health deteriorated in the weeks after the procedure due to numerous complications. Following further examinations and interventions, the child passed away on November 15, 2018.

{¶3} On January 25, 2023, Gray refiled a complaint asserting causes of action for negligence, wrongful death, loss of consortium, vicarious liability, negligent credentialing, negligent supervision, and negligent retention. The claims were lodged against CCHMC, Dr. Beth Rymeski, Dr. Christina Feng, Dr. Irene Lim-Beutel, Dr. Nelson Rosen, Dr. Timothy Dribin, Dr. Andrew Cox, Dr. Maria Alonso, Dr. Brandon Colvin, Dr. Heather Nolan, and Dr. Grace Martin (collectively "the defendants").

{¶4} The defendants filed separate answers to the complaint. On June 29, 2023, the trial court entered an order setting forth various deadlines for party filings. The order specified that Gray was to disclose the names of all expert witnesses and provide a summary of their opinions by September 28, 2023. The order expressly

indicated, "[i]f plaintiff fails to comply with [these disclosure directives], plaintiff's experts will be prevented from testifying."

{¶5} September 28, 2023, came and went without Gray submitting any expert disclosures. Thereafter, on October 12, 2023, the defendants jointly moved for summary judgment on all claims. On November 14, 2023, Gray filed her response in opposition to the defendants' joint motion for summary judgment. Gray simultaneously filed a purported disclosure document naming Dr. Gabriel Jacob Hauser as her medical expert.

{¶6} None of the parties requested a hearing on the defendants' joint motion for summary judgment. In a written decision entered on December 11, 2023, the trial court granted the motion. Gray subsequently moved the court to reconsider its decision, which motion was overruled on January 23, 2024. Gray filed her notice of appeal on February 20, 2024.

{¶7} The defendants jointly moved to dismiss the appeal as untimely, arguing that the trial court's January 23, 2024 judgment entry denying reconsideration was a nullity and that Gray's appeal from the December 11, 2023 entry was late. We declined to dismiss the appeal, however, noting that the trial court neglected to order service of the December 11, 2023 entry on the parties and that service had not been docketed by the clerk as required by Civ.R. 58(B). Thus, Gray's 30-day appeal clock had not yet begun to run. *See, e.g., White v. Cent. Ohio Gaming Ventures, LLC*, 2019-Ohio-1078, ¶ 10-12 (10th Dist.); *see also* App.R. 4(A)(3). Accordingly, we have jurisdiction to entertain the appeal. *See White* at ¶ 11-12.

### *The Trial Court's Decision*

{¶8} The trial court noted that the instant complaint was filed on January 25, 2023. Dr. Hauser's affidavit of merit was appended to the complaint. *See* Civ.R.

4

10(D)(2) (complaint alleging medical claims must be accompanied by expert's affidavit of merit in order to establish adequacy of complaint). Thereafter, on June 26, 2023, Gray's current attorney took over her representation by filing a notice of substitution of counsel. Three days later, the trial court issued the scheduling order imposing a deadline of September 28, 2023, for disclosure of Gray's experts. On November 14, 2023, well past the deadline and after the defendants had already moved for summary judgment, Gray filed the noncompliant expert disclosure naming Hauser.

{¶9} The trial court noted that Civ.R. 1(B) directs that the Civil Rules "shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." On the issue of excusable neglect, the court emphasized the fact that Gray had yet to submit an appropriate expert disclosure. The trial court's June 29, 2023 scheduling order specifically required Gray to disclose the names of expert witnesses and provide a written summary of their opinions by September 28, 2023. The order could not have been clearer, the court emphasized, and the defendants were simply asking the court to abide by and uphold its own orders—orders consented to by all the parties.

{¶10} Based upon its review of the provided documentation, the trial court additionally found that Gray's newly-substituted counsel was well aware of and had ample time to comply with the September 28, 2023 expert disclosure deadline. For whatever reason, the court noted, Gray did not comply with the order. Nor did the purported disclosure that was eventually filed comply with Civ.R. 26.

{¶11} Finally, regarding the common knowledge exception, the trial court found that many of the medical terms and conditions in the case were well beyond the

5

comprehension of laypersons. Accordingly, expert testimony was required to support Gray's claims and avoid summary judgment.

### *Standard of Review*

**{¶12}** In a single assignment of error, Gray insists the trial court wrongly granted the defendants' joint motion for summary judgment. We review a trial court's summary judgment ruling de novo. *Collett v. Sharkey*, 2021-Ohio-2823, ¶ 8 (1st Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is proper under Civ.R. 56(C) where (1) no genuine issues of material fact remain to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion that is adverse to the nonmoving party. *Al Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, ¶ 14 (1st Dist.).

**{¶13}** The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that convey specific facts demonstrating its entitlement to summary judgment. *Id.* at ¶ 15. If the moving party meets its burden, summary judgment is appropriate only where the nonmoving party fails to meet its reciprocal burden to put forth specific facts establishing the existence of a genuine issue of material fact for trial. *Id.*

**{¶14}** To the extent that our review contemplates the trial court's discovery rulings, scrutiny thereof involves an abuse of discretion standard. *See, e.g., Nuckols v. CONRAIL*, 2024-Ohio-1070 (6th Dist.) (trial court had discretion to disregard untimely expert reports). An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Morgan v. Jones*, 2022-Ohio-1831, ¶ 27 (1st Dist.), quoting *Cornell v. Shain*, 2021-Ohio-2094, ¶ 36 (1st Dist.).

***The Law on Medical Malpractice Claims***

**{¶15}** Generally speaking, the elements of a medical malpractice claim mirror a cause of action for simple negligence, including proof of (1) a duty requiring the physician to conform to the requisite standard of care, (2) a breach of that duty, (3) a causal connection between the breach and the injury, and (4) damages. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 48-49 (O'Donnell, J., concurring in judgment only), quoting *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 129-130 (1976).

**{¶16}** In order to support a claim of medical negligence, a complainant must submit evidence establishing the requisite standard of care, show that the physician negligently diverged from that standard, and demonstrate an injury proximately resulting from the physician's actions. *White v. Summa Health Sys.*, 2008-Ohio-6790, ¶ 11 (9th Dist.), quoting *Davis v. Virginian Ry. Co.*, 361 U.S. 354 (1960). This foundation must be laid by way of expert testimony. *Bruni* at 131-132; *White v. Leimbach*, 2011-Ohio-6238, ¶ 34, citing *Berdyck v. Shinde*, 66 Ohio St.3d 573, 579 (1993), and *Bruni* at 130 (providing, "[i]n general, when a medical claim questions the professional skill and judgment of a physician, expert testimony is required to prove the relevant standard of conduct"). The failure to do so supports a grant of summary judgment in favor of the challenged physician. *See, e.g., Brielmaier v. Physicians Anesthesia Servs., Inc.*, 1989 Ohio App. LEXIS 1940, *3 (1st Dist. May 31, 1989); *Hoffman v. Davidson*, 31 Ohio St.3d 60, 61-62 (1987).

***The Propriety of Summary Judgment in Favor of the Defendants***

**1.** ***Excusable neglect***

**{¶17}** Gray filed a notice of substitution of counsel on June 26, 2023. The new attorney filed an affidavit avowing that Gray's previous lawyer asked him to substitute

as counsel on or around June 26, 2023, due to the previous lawyer's health issues. Gray's new attorney further swore he did not receive a copy of the trial court's June 29, 2023 scheduling order.

**{¶18}** The defendants insist the record supports that Gray's substitute counsel and/or cocounsel indeed had notice of the June 29, 2023 scheduling order. The defendants further emphasize the fact that Gray has yet to file an expert disclosure that complies with Civ.R. 26(B)(7). They reason that, even if Gray disclosed an expert witness, she failed to meet her reciprocal burden under Civ.R. 56. In the face of these deficiencies, the defendants maintain, summary judgment was proper.

**{¶19}** Civ.R. 6(B)(2) provides that a court may extend time for any action "upon motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect[.]" "Excusable neglect" is generally defined as:

> A failure . . . to take some proper step at the proper time . . . not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.

*Black's Law Dictionary* (11th Ed. 2019).

**{¶20}** By contrast, "mere neglect" does not warrant relief for the offending party. *Suon v. Mong*, 2018-Ohio-4187, ¶ 25 (10th Dist.) (discussing "excusable neglect" in the context of relief from judgment under Civ.R. 60(B)(1)). Conduct which "falls substantially below what is reasonable under the circumstances" amounts to inexcusable neglect. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 152 (1976), quoting *Link v. Wabash RR. Co.*, 370 U.S. 626, 634, fn. 10 (1962). Moreover, "if the party could have prevented the circumstances from

occurring, neglect will not be considered excusable." *Lester v. Chivington*, 2015-Ohio-5446, ¶ 20 (3d Dist.). In this vein, the Ohio Supreme Court explained that "the inaction of a defendant is not 'excusable neglect' if it can be labeled as a 'complete disregard for the judicial system.'" *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20 (1996), quoting *GTE* at 153.

{¶21} Some instances where excusable neglect was found to justify a party's or attorney's inaction include having no knowledge or notice of a pending legal action, suffering from personal or family illness, and failing to appear after not receiving notice of a rescheduled trial date. *Doddridge v. Fitzpatrick*, 53 Ohio St.2d 9, 13 (1978); *The Bluffs of Wildwood Homeowners' Assn., Inc. v. Dinkel*, 96 Ohio App.3d 278, 281 (12th Dist. 1994); *Columbia Gas of Ohio v. Riley*, 38 Ohio App.3d 151 (10th Dist. 1987), paragraph two of the syllabus. Other cases have declined to find excusable neglect, particularly where "the party or his attorney could have controlled or guarded against the happening of the special or unusual circumstance[.]" *Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525, 536 (4th Dist. 1997); *see Internatl. Lottery, Inc. v. Kerouac*, 102 Ohio App.3d 660, 667 (1st Dist. 1995) (out-of-state attorney not entitled to preferential treatment concerning procedural rules and time limits where he failed to appear despite receiving notice of trial). Ultimately, the court's determination of "excusable neglect" must take into account "all the surrounding facts and circumstances, with the admonition that cases should be decided on their merits, where possible." *Milatz v. Cincinnati*, 2019-Ohio-3938, ¶ 16 (1st Dist.), quoting *Fourtounis v. Verginis*, 2017-Ohio-8577, ¶ 12 (8th Dist.).

{¶22} In the case at bar, the affidavit of Dr. Grace Martin was among the documents appended to the defendants' joint motion for summary judgment. Martin was one of the physicians who treated the child during the relevant time period. She

swore that she was "qualified to render expert opinions on the issues of standard of care and causation as they relate to the claims arising out of [her] care and treatment of [the child]." Martin submitted expert opinion that "at all times [she] acted in accordance with accepted standards of care in providing care and treatment to [the child.]" Martin further opined that "[the child] suffered no injury as a result of any alleged deviation from the standard of care or alleged negligence on [her] behalf."

{¶23} Of note, Gray does not dispute on appeal that the defendants satisfied their initial burden to establish no genuine issues of material fact existed and the defendants were entitled to judgment as a matter of law. *See Al Neyer, LLC*, 2020-Ohio-5417, at ¶ 15 (1st Dist.). Rather, the crux of Gray's argument is that she was unable to meet her reciprocal burden to put forth specific facts establishing the existence of a genuine issue for trial due to the excusable neglect of her counsel. *See id.*

{¶24} To this end, Gray's new attorney swore in his affidavit that "[o]n or around June 26, 2023, [the attorney's law firm] was asked by [prior counsel] to substitute for him in this action due to [prior counsel's] health issues." That prompted Gray's new attorney to file the notice of substitution of counsel. The new attorney avowed that "[his law firm] did not receive a copy of the Scheduling Order entered June 29, 2023." Finally, the new attorney swore that, "[a]s a result of not having received the Scheduling Order, Plaintiff, through [her counsel], was unable to timely disclose Plaintiff's expert and report."

{¶25} Contrary to these averments, a thorough review of the record supports the conclusion that Gray's attorney and/or his cocounsel had actual knowledge of the June 29, 2023 scheduling order. In her affidavit, CCHMC's attorney swore that she "had knowledge that [substitute counsel] was representing Plaintiff well prior to the

case management conference on June 29, 2023." CCHMC's attorney further attested that "[a] previously scheduled case management conference . . . was delayed specifically so that [Gray's new attorney] could attend." According to CCHMC's attorney, either Gray's new counsel or one of his colleagues attended the June 29, 2023 case management conference.

{¶26} The email communications appended to the defendants' November 28, 2023 reply in support of their summary judgment motion, which were authenticated by affidavit, substantiate these assertions. The email chain establishes that the case management conference was rescheduled to permit Gray's new lawyer to attend. Gray's substitute counsel himself participated in this email chain. In an email dated June 28, 2023, substitute counsel confirmed the time for the case management conference set for the following day. The scheduling order in question was issued as a result of that very case management conference. Gray's new counsel thus had notice and ample time to comply with the order.

{¶27} The record lends further support. In his affidavit, Gray's new attorney acknowledged filing the notice of substitution of counsel three days *before* the June 29, 2023 scheduling order was entered. The notice was electronically signed by both Gray's former attorney and her new one, and the certificate of service was electronically signed by new counsel as well. Simultaneously with the notice of substitution, Gray's substitute attorney filed a notification form. That form contained the mailing address of his law firm, phone number, fax number, and email address. This information was thus of record when the trial court issued the scheduling order three days later. Presuming regularity in the absence of any indication on the record to the contrary, it follows that notice of the scheduling order was conveyed to the new

attorney's law firm. *See Rothman v. Lehman*, 1995 Ohio App. LEXIS 4174, *4-5 (1st Dist. Sept. 27, 1995).

**{¶28}** Despite having notice and time, no such disclosure was timely filed. Indeed, as stated, no compliant expert disclosure has *ever* been filed on Gray's behalf. Per the express terms of the trial court's scheduling order, Gray is barred from calling any experts to testify on her behalf.

**{¶29}** To reiterate, Ohio law requires that medical malpractice claims be supported by qualified expert testimony. It was thus incumbent upon Gray to submit evidence such as an "affidavit, deposition, or other evidentiary material containing an expert opinion about the applicable standard of care." *Hughes v. Bethesda Hosp., Inc.*, 2005-Ohio-2451, ¶ 10 (1st Dist.); Civ.R. 56(E). Where the complainant fails to provide such expert evidence, courts routinely grant summary judgment in favor of the hospital or physician. *See, e.g., Brielmaier*, 1989 Ohio App. LEXIS 1940, at *2-3 (1st Dist.); *Hoffman*, 31 Ohio St.3d at 61-62; *Burton v. Cotton*, 1998 Ohio App. LEXIS 4861, *2-3 (1st Dist. Oct. 16, 1998). That is what happened here. For the "[f]ailure to establish the recognized standards of the medical community is fatal to the presentation of a prima facie case of malpractice by the plaintiff." *Bruni*, 46 Ohio St.2d at 133, quoting *Finley v. United States*, 314 F.Supp. 905, 911 (N.D.Ohio 1970). *Compare Yung v. UC Health, LLC*, 2023-Ohio-789, ¶ 19-20 (1st Dist.) (medical expert's testimony sufficient to generate a question of fact for the jury concerning failure to properly protect patient's hearing during MRI procedure).

**{¶30}** Nor did Gray move for a continuance under Civ.R. 56(F) to secure the requisite expert testimony. As the Tenth District Court of Appeals explained:

> Civ.R. 56(F) provides the sole remedy for a party who must respond to
> a motion for summary judgment before it has completed adequate

discovery. Pursuant to Civ.R. 56(F), a party may request that the trial court defer ruling on the motion for summary judgment pending the completion of discovery. When a party fails to move for a Civ.R. 56(F) continuance, a trial court may grant summary judgment to the moving party even if discovery remains incomplete. Moreover, the party that fails to move for a Civ.R. 56(F) continuance does not preserve his right to challenge the adequacy of discovery on appeal.

(Internal citations omitted.) *Hernandez v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-8646, ¶ 17 (10th Dist.). The record before us does not evince any attempt by Gray to request more time to obtain the required expert testimony. This further hampers her prayer for relief from summary judgment on appeal. *See, e.g., Sanchez v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-2534, ¶ 28 (10th Dist.) ("Because expert medical testimony is required to support a medical malpractice claim, summary judgment in favor of the defendant is proper where the plaintiff both fails to produce an expert report and does not move for and receive a continuance under Civ.R. 56(F).").

{¶31} What is more, the purported expert disclosure ultimately filed by Gray falls far short of what the law requires. The document indicated Hauser would testify that:

A. Defendants did not order adequate cardio-respiratory monitoring and vital signs were ordered at inadequate frequency (blood pressure daily).

B. Defendants should have obtained blood cultures and started broad spectrum antibiotics when [the child] was admitted. [The child] had the classic clinical symptoms of sepsis: fever,

tachycardia (high heart rate), tachypnea (high respiratory rate) and change in mental status, and later cool extremities, in addition to low white blood cell count with a left shift and metabolic acidosis.

C.      Defendants failed to closely monitor [the child]. [The child] was likely hypotensive and hypoxic for about 1/2 hour on November 15th when the nurse found him non-responsive with weak pulse and shallow breathing at 18:15. She had given him Tylenol at 17:37.

D.      Defendants ignored AUTOMATIC WARNING FOR[] SEPSIS.

(Capitalized letters in original.)

{¶32}  Civ.R. 26 governs discovery.  Regarding disclosure of expert testimony, subsection (B)(7) provides in pertinent part:

(a) A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Ohio Rule of Evidence 702, 703, or 705.

(b) The reports of expert witnesses expected to be called by each party shall be exchanged with all other parties. The parties shall submit expert reports and curricula vitae in accordance with the time schedule established by the Court. The party with the burden of proof as to a particular issue shall be required to first submit expert reports as to that issue. Thereafter, the responding party shall submit opposing expert reports within the schedule established by the Court.

(c) Other than under subsection (d), a party may not call an expert witness to testify unless a written report has been procured from

the witness and provided to opposing counsel. The report of an expert must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify. It must also state the compensation for the expert's study or testimony. Unless good cause is shown, all reports and, if applicable, supplemental reports must be supplied no later than thirty (30) days prior to trial. An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report.

(d) Healthcare Providers. A witness who has provided medical, dental, optometric, chiropractic, or mental health care may testify as an expert and offer opinions as to matters addressed in the healthcare provider's records. Healthcare providers' records relevant to the case shall be provided to opposing counsel in lieu of an expert report in accordance with the time schedule established by the Court.

**{¶33}** The plain text of Civ.R. 26(B)(7)(c) requires disclosure of a complete statement of all expert opinions and their bases. That subsection also requires the disclosure of compensation paid to the expert for his or her study or testimony. Gray's purported disclosure provided only blanket summaries offered by her counsel—not Hauser—as to Hauser's expected testimony. *See* Civ.R. 26(B)(7)(c); *see also* Civ.R. 56(E) (supporting averments must be based on personal knowledge). Nor was the filing accompanied by an affidavit sworn to and signed by Hauser himself. *See id.* The filing additionally omits Hauser's compensation for his expert services. In view of these omissions, the purported expert disclosure filed by Gray clearly did not comply with the relevant rules. *See Riverside Drive Ents., LLC v. Geotechnology, Inc.*, 2023-Ohio-583, ¶ 13 (1st Dist.) (noting that Civ.R. 26(B)(7) requires that parties submit

expert reports which disclose a complete statement of all opinions and the bases and reasons for those opinions).

**{¶34}** Where a party fails to comply with discovery rules and deadlines, a trial court is within its discretion to exclude the offending evidence. *Id.* at ¶ 12, citing *State ex rel. Dewine v. ARCO Recycling, Inc.*, 2022-Ohio-1758, ¶ 54 (8th Dist.); *Myers v. John A. Hudec Cleveland Dental Ctr. Inc.*, 2022-Ohio-80, ¶ 33 (8th Dist.) (trial court's exclusion of expert affidavit did not constitute an abuse of discretion where affidavit was filed late); *Hanick v. Ferrara*, 2020-Ohio-5019, ¶ 38 (7th Dist.) (same). As stated, Gray has yet to file a compliant expert disclosure, much less a proper disclosure that was excluded solely because it was late. *See Haworth v. Roman*, 2023-Ohio-3816, ¶ 13-22 (2d Dist.) (holding that, in a medical negligence action, the trial court did not abuse its discretion in striking plaintiff's expert disclosure because it was not filed in accordance with the schedule set by the court and did not comply with Civ.R. 26(B)(7)).

**{¶35}** Finally, even if Gray's late expert disclosure were deemed acceptable under Civ.R. 26, the blanket statements therein fail to flesh out the accepted standards of care in the relevant medical community, whether and precisely how the physicians' actions deviated from those standards, and how those deviations caused the child's untimely demise. Accordingly, Gray could not meet her reciprocal burden to withstand summary judgment. *See Morris v. Children's Hosp. Med. Ctr.*, 73 Ohio App.3d 437, 439 (1st Dist. 1991) ("If, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to his case and on which he will bear the burden of proof at trial, Civ. R. 56(C) mandates the entry of summary judgment in favor of the moving party[.]").

**{¶36}** To reiterate, excusable neglect contemplates an omission due to some unexpected or unavoidable hindrance or accident. Inexcusable neglect, on the other hand, reflects carelessness, inattention, or a willful disregard of court processes. Gray's failure to file a timely, compliant expert report implicates the latter. Because the record reveals no genuine issues of material fact pertaining to excusable neglect, the trial court did not err in awarding summary judgment to the defendants on this front. *Compare Blair v. Boye-Doe*, 2004-Ohio-1876, ¶ 15-16 (9th Dist.).

## 2. *The common knowledge exception*

**{¶37}** Next, Gray argues that summary judgment was improper because there existed an issue of fact as to the applicability of the "common knowledge" exception. Where relevant, this exception dispenses with the need for expert testimony to substantiate a medical malpractice claim. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 103 (1992). Under the common knowledge exception, "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Id.*

**{¶38}** Gray insists a typical juror could comprehend how the defendants' gross inattention, botched interventions, and neglect of the child resulted in his premature death. She emphasizes the facts that the child was left unattended in his hospital room following the last intervention, the defendants failed to continuously monitor him, and the defendants ignored obvious critical signs of imminent danger.

**{¶39}** The defendants counter that the common knowledge exception is inapplicable to this case. They contend the highly complicated medical history, facts, allegations, diagnoses, and treatments implicated by this case cannot be reduced to the common knowledge of a layperson.

**{¶40}** The filings allege that the child underwent an ileostomy closure procedure; subsequently experienced abdominal distension and other symptoms suggestive of an obstruction; underwent an x-ray that revealed pneumoperitoneum in the abdomen, which was concerning for an anastomotic leak; underwent an exploratory laparotomy, anastonimic leak repair, and abdominal wash out; was diagnosed with an acute perforation of the corner of his ileo-ileal anatomisis; was readmitted for C-Diff colitis and prescribed a course of Flagyl and rectal irrigations; was scheduled for an examination under general anesthesia after exhibiting symptoms possibly indicating a bowel obstruction; was subsequently found unresponsive by nursing staff with a weak pulse and shallow breathing; was acutely hypotensive and bradycardic at the time; was transferred to intensive care and placed on life support; experienced multi-organ failure, septic shock, and cardiac arrest; underwent another laparotomy, which revealed global hypoperfused ischemic bowel, shock bowel, enterocolitis, and intra-abdominal edema with intra-abdominal hypertension; and causes of death included cardiac arrest, septic shock, and Hirshprung associated with enterocolitis.

**{¶41}** We agree that these are complex medical terms, conditions, and modes of treatment that do not fall within the ambit of the average person's knowledge. Nor do the issues concerning the professional skill and judgment of the physicians attending to the child contemplate matters within the common knowledge and experience of laypersons. *See Ramage*, 64 Ohio St.3d at 103. This stands in stark contrast to the cases cited by Gray concerning patient falls, a creature of ordinary negligence. *See Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503 (1964); *Burks v. Christ Hosp.*, 19 Ohio St.2d 128 (1969); *LaCourse v. Flower Hosp.*, 2002-Ohio-3816 (6th Dist.); *Dimora v. Cleveland Clinic Found.*, 114 Ohio App.3d 711 (8th Dist. 1996);

18

*see also Haworth,* 2023-Ohio-3816, at ¶ 29-30 (2d Dist.) (noting that "nearly all the Ohio caselaw in the 'common knowledge' exception can be placed in the [ ] category [of negligent supervision]"). Thus, Gray was required to present expert testimony describing the prevailing standard of care, the defendants' breach of that standard, and causation. *Ramage* at 103-104.

{¶42} Because the record reveals no genuine issues of material fact regarding the inapplicability of the common knowledge exception, the trial court did not err in awarding summary judgment to the defendants on this front. *See, e.g., Cunningham v. Children's Hosp.,* 2005-Ohio-4284, ¶ 19-23 (10th Dist.).

### *Conclusion*

{¶43} Following a thorough, independent review, we conclude that it was proper for the trial court to grant summary judgment in favor of the defendants. Accordingly, we overrule Gray's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
 The court has recorded its own entry on the date of the release of this opinion.