[Cite as *In re R.R.*, 2026-Ohio-1919.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>R.R., JR. | **CASE NO. 2025-P-0074**<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Juvenile Division<br><br><br>Trial Court No. 2025 JCC 00334 |

---

## OPINION AND JUDGMENT ENTRY

Decided: May 26, 2026
Judgment: Affirmed

---

*Connie J. Lewandowski*, Portage County Prosecutor, *Julia B. Adkins* and *Brandon J. Wheeler*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellant, Portage County Department of Job and Family Services).

*Corinne Hoover* and *Rachel L. Smick*, Hoover Kacyon, L.L.C., 527 Portage Trail, Cuyahoga Falls, OH 44221 (For Appellee, Adoption Professionals, L.L.C.).

*J. Reid Yoder*, Dicaudo, Pitchford & Yoder, L.L.C., 209 South Main Street, Third Floor, Akron, OH 44308 (For Intervenors, Rachel and Michael Adams).

JOHN J. EKLUND, J.

{¶1}   Appellant, Portage County Department of Job and Family Services, appeals the judgment of the Portage County Court of Common Pleas, Juvenile Division, dismissing the allegations of abuse, neglect, and dependency involving R.R., Jr., a minor child born in 2025.

{¶2}   Appellant raises two assignments of error, arguing that (1) the trial court's decision to exclude the testimony of one of its proposed expert witnesses, Dr. McPherson,

was an abuse of discretion; and (2) the trial court's decision to dismiss the allegations of abuse, neglect, and dependency is against the manifest weight of the evidence.

{¶3} Having reviewed the record and the applicable law, we find that Appellant's assignments of error are without merit. First, the trial court properly excluded Dr. McPherson's proposed expert testimony. Appellant did not provide a written report from Dr. McPherson pursuant to Civ.R. 26(B)(7)(c), and Dr. McPherson did not meet the "healthcare provider" exception in Civ.R. 26(B)(7)(d), i.e., "[a] witness who has provided medical . . . care" and who will "testify as an expert and offer opinions as to matters addressed in [his] records." Second, the evidence supports the trial court's dismissal of Appellant's allegations of abuse, neglect, and dependency.

{¶4} Therefore, we affirm the judgment of the Portage County Court of Common Pleas, Juvenile Division.

**Substantive and Procedural History**

{¶5} R.R. was born on January 17, 2025, with multiple medical issues, including Spina Bifida, VP shunted Hydrocephalus, Chiari 2 Decompression, Neurogenic bowel and bladder, Pierre Robin Sequence, Scoliosis, and bilateral vocal cord paralysis. R.R. requires an external oxygen source, a trachea, and 24-hour care. His caregivers are required to be trained in recognizing signs of shunt malfunctions and appropriate trach care.

{¶6} Appellee, Adoption Professionals, LLC, is a private adoption agency located in Hamilton County, Ohio. On January 21, 2025, Adoption Professionals obtained permanent custody of R.R. through the Butler County Probate Court via a permanent surrender from his birth mother. Adoption Professionals arranged for R.R.'s placement

with Intervenors, Rachel and Michael Adams, as R.R.'s prospective adoptive family. The Adams reside in Rootstown, Ohio, with their minor son.

{¶7}   R.R. spent his first 74 days at the Neonatal Intensive Care Unit ("NICU") at Cincinnati Children's Hospital. The Adams stayed in Cincinnati during R.R.'s period of hospitalization. On April 1, 2025, R.R. was released from the NICU, and the Adams brought him to their home in Rootstown. Thereafter, the Adams served as R.R.'s primary caregivers and took him to multiple medical appointments.

{¶8}   On June 12, 2025, Ms. Adams brought R.R. to a medical appointment at the Myelo Clinic at Akron Children's Hospital. X-rays performed during the appointment showed that R.R. had multiple rib fractures. R.R. was then transferred to the hospital's Children at Risk Evaluation ("CARE") Center for further examination.

{¶9}   Dr. Welko, a physician at the CARE Center, provided a consultation. In her report dated June 13, 2025, Dr. Welko determined that R.R. had a total of eight healing rib fractures—five on the back right, one on the right side of the chest, and two on the back left. Dr. Welko found that it was "highly unlikely" that R.R. had "an underlying medical condition that would predispose to the noted clinical presentation and/or injuries"; that the injuries were "not the result of normal parent-child interactions, normal child care, or minor household falls"; and that "[t]he findings are not injuries sustained at birth and are not consistent with accidental injury based on the developmental stage of the child." Dr. Welko concluded that "the injuries noted are highly concerning for inflicted trauma, and within a reasonable degree of medical certainty are consistent with a diagnosis of child physical abuse." Dr. Welko opined that the fractures were likely three to five weeks old and less likely up to eight weeks. Dr. Welko stated that R.R. "will be at risk of

Case No. 2025-P-0074

additional harm if returned to his previous care environment without additional assessment or intervention."

{¶10} On June 13, 2025, Appellant began investigating the matter. The Adams said that they did not inflict R.R.'s injuries and that they had no idea how the injuries occurred. Sheryl Linne, director of Adoption Professionals, stated her belief that the Adams would never harm R.R. and that they remained appropriate for R.R.'s placement and eventual adoption. The parties consented to R.R. remaining at Akron Children's Hospital despite being medically cleared for discharge until they could locate alternative placement.

{¶11} On June 27, 2025, Appellant filed a complaint in the Portage County Court of Common Pleas, Juvenile Division. Appellant alleged that R.R. was a neglected, abused, and dependent child and requested that the trial court inquire and grant it protective supervision or temporary custody.

{¶12} On July 1, 2025, the Adams appeared through counsel and filed a motion to intervene.

{¶13} On July 9, 2025, the trial court appointed CASA of Portage County as guardian ad litem ("GAL").

{¶14} On July 22, 2025, Adoption Professionals appeared through counsel. On July 28, 2025, it filed several pretrial motions.

{¶15} The magistrate held hearings on July 10, 17, and 30, 2025. On July 30, 2025, the magistrate filed a decision in which it recommended continuation of Adoption Professionals' permanent custody of R.R.; granting interim, pre-dispositional, protective supervision over R.R. to Appellant; and granting the Adams' motion to intervene. The

magistrate also transferred the matter to the trial court judge and scheduled hearings for pending motions and adjudication.

{¶16}  On July 31, 2025, the trial court adopted the magistrate's decision.  On the same date, the trial court filed a journal entry temporarily enjoining Adoption Professionals and the Adams from finalizing R.R.'s adoption.

{¶17}  On August 15, 2025, the trial court held a hearing on pending motions.  In a journal entry filed the same date, the court disposed of several pretrial motions.

{¶18}  On August 21, 2025, the trial court held a status hearing.  In a journal entry filed the same date, the trial court ordered that R.R. be released from Akron Children's Hospital and into the care of the Adams under a safety plan agreed to by the parties and adopted by the court.

{¶19}  On August 27, 2025, the trial court held a hearing on pending motions.  By journal entry filed on the same date, the court disposed of several additional pretrial motions.

{¶20}  On September 3, 2025, the trial court held an emergency hearing on case management update and mediation.  Appellant indicated that no agreement would be reached in mediation and that it wished to proceed with an adjudicatory hearing.

{¶21}  On the same date, Appellant filed an amended complaint.

{¶22}  On September 10 and 11, 2025, the parties filed their respective witness lists for the adjudicatory hearing.  Appellant's witness list included Dr. McPherson from Akron Children's Hospital.

{¶23}  On September 11, 2025, the Adams filed a motion in limine to exclude the proposed expert opinion and testimony of Dr. McPherson.  The Adams argued that

Appellant failed to produce a written report as the civil and local rules require and that they would be prejudiced by inadequate time for preparation and by unfairly allowing Appellant to introduce testimony that was neither known to them nor contemplated. On the same date, Adoption Professionals filed a notice joining the Adams' motion in limine.

{¶24} Also on the same date, Appellant filed a response. Appellant asserted that Dr. McPherson was not a retained expert who would be submitting a report; rather, he was a doctor who treated R.R. at Akron Children's Hospital. In addition, Appellant provided the hospital's records to the parties, and the parties stipulated to their authenticity.

{¶25} The trial court held an adjudicatory hearing on September 17, 18, and 19, 2025. At the beginning of the hearing, the trial court addressed several preliminary matters, including the motion to exclude Dr. McPherson's proposed expert testimony. After hearing argument, the trial court overruled the motion on the basis that Dr. McPherson is a treating physician under Civ.R. 26(B)(7). However, the court instructed Appellant to limit questioning to matters contained in the medical records.

{¶26} When Appellant called Dr. McPherson to testify, Adoption Professionals and the Adams renewed their objections. They asserted that based on further review, the medical records from Akron Children's Hospital contained no opinion from Dr. McPherson; rather, Dr. McPherson's name appeared only in a medical note authored by a social worker. Appellant confirmed that understanding but countered that Akron Children's Hospital employs Dr. McPherson and consulted him on R.R.'s case. Based on this information, the trial court reversed its prior decision, granted the motion in limine, and precluded Dr. McPherson from testifying.

{¶27} Appellant presented testimony from Dr. Welko from Akron Children's Hospital, and Charline Minter, a social worker Appellant employs.

{¶28} The trial court qualified Dr. Welko as an expert witness. As stated, Dr. Welko served as a consulting physician at Akron Children's Hospital. She opined within a reasonable degree of medical certainty that R.R.'s injuries were consistent with a diagnosis of child physical abuse. She also opined that the factures occurred between three to five weeks prior to June 12, 2025, and could have occurred eight weeks prior. She stated that this "type of rib fracture occurs almost exclusively with squeezing compression or shaking of a child."

{¶29} Ms. Minter testified regarding her investigation of alleged abuse, which began on June 13, 2026. Based on her investigation, Ms. Minter concluded that R.R. was physically abused and neglected, but she did not know by whom. Ms. Minter also testified that she had concerns regarding Adoption Professional's ability to acknowledge the alleged abuse.

{¶30} After Appellant presented its case, Adoption Professionals and the Adams orally moved for a directed verdict. The trial court granted the motion with respect to the neglect allegations but denied the motion with respect to abuse and dependency allegations.

{¶31} The Adams presented testimony from Dr. Hubbard, their family physician from Summa Medical Group in Rootstown; Dr. Mack, a diagnostic radiologist from Hershey Medical Center in Hershey, Pennsylvania; Dr. Dehnel, a pediatric hospitalist at CentraCare St. Cloud Hospital in St. Cloud, Minnesota; Brenda Lare, director and founder

Case No. 2025-P-0074

of Adoption Home Study Services of Ohio; Mr. Adams; Sheryl Linne, director of Adoption Professionals; and Mrs. Adams.

{¶32} Dr. Hubbard testified that she examined R.R. on April 2, 2025, i.e., shortly after his release from Cincinnati Children's Hospital. During her examination, she had no concerns that R.R. was being physically abused.

{¶33} The trial court qualified Dr. Mack as an expert witness. Dr. Mack disagreed with Dr. Welko's opinion that the injuries occurred three to five weeks prior to June 12, 2025. She stated that such an opinion misstates the literature that Dr. Welko cited and fails to allow for variability in fracture healing by individual patients. Dr. Mack stated that the injuries could have occurred seven to nine weeks prior. Dr. Mack also testified that the available data indicated that R.R. has fragile bones. Risk factors for such a condition include R.R.'s immobility; his lack of neonatal care from his birth mother; his being on TPN (Total Parenteral Nutrition); and his poor initial weight gain. Dr. Mack opined that the presence of multiple risk factors and the fact that no one knew the fractures were present support a diagnosis of bone fragility; that the fractures occurred under low force instead of significant force; and that chest physiotherapy could have been a contributing cause.

{¶34} The trial court also qualified Dr. Dehnel as an expert witness. Dr. Dehnel disagreed with Dr. Welko's findings, stating there was not "sufficient exploration of the possible causes of the fractures." He stated that R.R. was at high risk of rib fractures due to prenatal nutritional factors, nutritional deficiencies during his various surgeries, and an abnormally-formed rib cage. Dr. Dehnel testified that he agreed with Dr. Mack's opinion.

Case No. 2025-P-0074

He opined "to the highest degree of medical certainty" that R.R.'s injuries "were not nonaccidental trauma."

{¶35} Ms. Lare from Adoption Home Study Services of Ohio testified that she is a licensed Ohio social worker and a certified Ohio adoption assessor. In December 2024, her agency performed a home study for the Adams' proposed adoption of R.R. The home study included an initial application, a phone call with the Adams, an interview with the Adams at their home, a safety audit, and a written report. Ms. Lare had no concerns about the Adams or their home and stated her opinion that the Adams were an appropriate placement for R.R.

{¶36} The Adams testified regarding their challenging experience as R.R.'s prospective adoptive family. They denied harming R.R.

{¶37} Ms. Linne from Adoption Professionals testified regarding her agency's obtaining permanent custody of R.R. and placing him with the Adams as his prospective adoptive family. She had no concerns about the Adams' care of R.R.

{¶38} After the presentation of evidence, the parties stipulated to the admission of medical records from Akron Children's Hospital and Cincinnati Children's Hospital and other documents. Counsel also presented closing arguments.

{¶39} On September 26, 2025, the trial court filed a 14-page, single-spaced journal entry dismissing Appellant's allegations of neglect, abuse, and dependency. In its entry, the trial court memorialized its oral dismissal of the neglect allegations. The court also found that Appellant failed to prove, by clear and convincing evidence, that R.R. is an abused or dependent child. With respect to dependency under R.C. 2151.04(B) and (C), the trial court found that "[t]here was simply no testimony presented

Case No. 2025-P-0074

to support that the child was without proper or adequate care of support." With respect to abuse under R.C. 2151.031(C), the trial court found that Appellant failed to produce evidence that R.R. was "endangered." With respect to abuse under R.C. 2151.031(D), the trial court found that R.R. "suffered physical injury in the form of several healing rib fractures." However, the court was "unconvinced that that injuries suffered by this child were inflicted by something other than accidental means." In explaining its reasoning, the court found Dr. Mack's testimony to be "highly credible."

{¶40} On October 23, 2025, Appellant timely appealed and raises two assignments of error.

### Expert Testimony

{¶41} Appellant's first assignment of error states: "THE TRIAL COURT'S DECISION TO EXCLUDE THE TESTIMONY OF DR. MCPHERSON WAS AN ABUSE OF DISCRETION."

{¶42} "A trial court's ruling on evidentiary issues, including the admissibility of expert opinions, will not be reversed on appeal absent an abuse of discretion and proof of material prejudice." *State v. Belton*, 2016-Ohio-1581, ¶ 116. "Where a party fails to comply with discovery rules and deadlines, a trial court is within its discretion to exclude the offending evidence." *Gray v. Cincinnati Children's Hosp. Med. Ctr.*, 2024-Ohio-3168, ¶ 34 (1st Dist.).

{¶43} The trial court excluded Dr. McPherson's proposed testimony pursuant to Civ.R. 26(B)(7), which governs the disclosure of expert testimony. It provides, in relevant part:

(a) A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Ohio Rule of Evidence 702, 703, or 705.

(b) The reports of expert witnesses expected to be called by each party shall be exchanged with all other parties. The parties shall submit expert reports and curricula vitae in accordance with the time schedule established by the Court. The party with the burden of proof as to a particular issue shall be required to first submit expert reports as to that issue. Thereafter, the responding party shall submit opposing expert reports within the schedule established by the Court.

*(c) Other than under subsection (d), a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel.* The report of an expert must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify. It must also state the compensation for the expert's study or testimony. Unless good cause is shown, all reports and, if applicable, supplemental reports must be supplied no later than thirty (30) days prior to trial. An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report.

*(d) Healthcare Providers.* *A witness who has provided medical,* dental, optometric, chiropractic, or mental health *care may testify as an expert and offer opinions as to matters addressed in the healthcare provider's records.* Healthcare providers' records relevant to the case shall be provided to opposing counsel in lieu of an expert report in accordance with the time schedule established by the Court.

(Emphasis added.) Civ.R. 26(B)(7)(a)-(d).

{¶44} Civ.R. 26 was substantially amended in 2020. The Staff Notes explain the purpose of the amendments to Civ.R. 26(B)(7), as follows:

The Ohio Civil Rules had not previously required experts to provide a written report. The Local Rules of some counties required a written report while many others did not. Interrogatories directed to the subject matter on which an expert may testify have in practice shown to be an insufficient means to ascertain an opposing expert's opinions and the grounds upon which they are based. The absence of a written report frequently puts counsel in the position of having to bear the substantial time and expense of a deposition in order to learn the opinions of an opposing party's expert. Requiring a written report from experts setting forth all opinions and the basis and reasons for such opinions may, in many cases, obviate the need for a deposition, and will lessen the time and significant expense associated with

expert discovery.  So will permitting the deposition of experts only after the mutual exchange of expert reports.  *Further expense can be lessened by permitting healthcare providers to testify as an expert as to matters addressed in medical records, without the necessity of writing a separate medical report, if such records are timely provided to opposing counsel*.

(Emphasis added.)

{¶45}  Appellant acknowledges that it did not provide a written report from Dr. McPherson pursuant to Civ.R. 26(B)(7)(c) but argues that Dr. McPherson satisfied the "healthcare provider" exception in Civ.R. 26(B)(7)(d).  To satisfy that exception, Appellant was required to show that Dr. McPherson was "[a] witness who has provided medical . . . care" and who would "testify as an expert and offer opinions as to matters addressed in [his] records."  *Id*.

{¶46}  Appellant argues that Dr. McPherson was one of R.R.'s "treating physicians" and that his "name and notes were throughout the medical records" from Akron Children's Hospital.  Appellant does not cite the specific pages on which Dr. McPherson's "name and notes" purportedly appear.  Our review of those medical records does not support Appellant's assertion.  Dr. McPherson's name appears three times within 3,118 pages of records.  The first instance is set forth in a "Social Work Progress Note" authored by Sherri Roberts, LISW-S, on June 13, 2025 (page 49).  The note states, in relevant part:

> 1715: Received call from Ms. Rice requesting clarification about medical impression if the rib fractures could have been caused by resuscitation event at Cinci Children's NICU on 3/6/25.  Facilitated a 3-way call between Ms. Rice, Portage Co. Sheriff (Detective Anna M), and *Dr. McPherson (CARE Center provider on-call this weekend) who offered his medical impression of why it is unlikely that the rib fractures were caused by the 3/6 event*.

(Emphasis added.)

Case No. 2025-P-0074

{¶47} The second and third instances are set forth in a "Social Work Progress Note" authored by Irina Dyakiv, LISW-S, on July 22, 2025. The note states that a "[n]inth virtual meeting" was held with "16 participants," including Dr. McPherson (page 693). The note also states, "Dr. McPherson scheduled to meet with PCCS on Friday 7/25" (page 694).

{¶48} Dr. McPherson did not author either of these two notes. Therefore, they cannot reasonably be characterized as his "records." Civ.R. 26(B)(7)(d). In addition, the notes do not involve Dr. McPherson personally providing "medical care" to R.R. *Id*. At most, they show that Dr. McPherson had some involvement in R.R.'s case while R.R. was admitted at Akron Children's Hospital.

{¶49} To further illustrate the "healthcare provider" exception, we contrast Dr. McPherson with Dr. Welko, whose expert testimony the respondents did not challenge at the adjudicatory hearing. Like Dr. McPherson, Dr. Welko is a physician from Akron Children's Hospital, and she did not submit a separate expert report. Unlike Dr. McPherson, however, the consultation report that Dr. Welko authored on June 13, 2025, as well as other notes she authored, are contained in the medical records provided to opposing counsel. Dr. Welko's report shows that she personally examined R.R. and reviewed his medical records, and her findings and opinions are explicitly set forth therein.

{¶50} Appellant next argues that it provided "appropriate notice of Dr. McPherson's testimony through the witness list filed in the trial court and served on all parties." While Appellant is correct, such actions involved a separate legal duty. Specifically, Appellant's duty to disclose Dr. McPherson's identity as an expert witness

Case No. 2025-P-0074

was imposed pursuant to Civ.R. 26(B)(7)(a). As indicated, the focus of our analysis is whether Dr. McPherson met the exception in Civ.R. 26(B)(7)(d).

{¶51} Appellant next argues that Dr. McPherson's testimony satisfied Evid.R. 703 and this Court's decision in *In re Veccia*, 2006-Ohio-6095 (11th Dist.). According to Appellant, Dr. McPherson was "prepared to testimony about [his] professional medical opinion based on facts and data he directly perceived." Evid.R. 703 and *In re Veccia* both involve the *bases* of expert's testimony, not its *disclosure*. Therefore, neither authority supports reversal in this case.

{¶52} We acknowledge that Dr. McPherson's proposed expert testimony was highly relevant to Appellant's case-in-chief. However, the Supreme Court of Ohio promulgated the Rules of Civil Procedure pursuant to its express constitutional authority *See* Ohio Const., art. IV, § 5(B) ("The supreme court shall prescribe rules governing practice and procedure in all courts of the state . . . "). The Court has held that "[i]f a court rule is unambiguous, it is to be applied as written." *State v. Bellamy*, 2022-Ohio-3698, ¶ 9. We find Civ.R. 26(B)(7) to be unambiguous, and Appellant has not asserted otherwise; therefore, we apply it as written.

{¶53} Since Dr. McPherson's proposed expert testimony did not satisfy the "healthcare provider" exception in Civ.R. 26(B)(7)(d), Appellant was precluded from calling him to testify as an expert witness. *See* Civ.R 26(B)(7)(c) ("Other than under subsection (d), a party *may not* call an expert witness to testify unless . . . .") (Emphasis added.) Accordingly, the trial court properly excluded Dr. McPherson's proposed expert testimony.

{¶54} Appellant's first assignment of error is without merit.

Case No. 2025-P-0074

**Manifest Weight of the Evidence**

{¶55} Appellant's second assignment of error states: "THE TRIAL COURT'S DECISION TO DISMISS THE ALLEGATIONS OF ABUSE, NEGLECT, AND DEPENDENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶56} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25. When reviewing whether a judgment is against the manifest weight of the evidence, "the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14.

{¶57} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, § 603, at 191-192 (1978). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the

Case No. 2025-P-0074

manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶58} "If a court of appeals determines that a judgment is against the manifest weight of the evidence, the proper remedy is a remand for a new trial." *In re Z.C.* at ¶ 16. However, "'[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].'" *State v. Thompkins*, 1997-Ohio-52, ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### A. Abuse

{¶59} Appellant's complaint alleged that R.R. is an "abused child" under R.C. 2151.031(D), which is a "child who . . . [e]xhibits evidence of [1] any physical or mental injury or death, inflicted other than by accidental means, *or* [2] an injury or death which is at variance with the history given of it."[1] (Emphasis added.)

{¶60} Appellant challenges the trial court's reliance on Dr. Mack's and Dr. Dehnel's expert testimony. Appellant argues that the trial court should have excluded or at least limited their testimony because both testified beyond the scope of their qualifications and because Dr. Dehnel did not review R.R.'s medical records from Cincinnati Children's Hospital.

{¶61} Appellant did not object to Dr. Mack's and Dr. Dehnel's testimony on these grounds at the adjudicatory hearing. *See* Evid.R. 103(A)(1) (requiring a "timely objection"

---

1. Appellant's complaint also alleged that R.R. was an "abused child" under R.C. 2151.031(C), which is a "child who . . . [i]s endangered as defined in [R.C. 2919.22], except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]" The trial court found that Appellant failed to produce evidence that R.R. was "endangered," and Appellant does not expressly challenge that finding on appeal. Therefore, Appellant has waived any error regarding R.C. 2151.031(C).

Case No. 2025-P-0074

to the admission of evidence).  In addition, Appellant does not assert, much less purport to establish, plain error on appeal.  *See Goldfuss v. Davidson*, 1997-Ohio-401, at syllabus (permitting plain error in civil cases under limited circumstances).  Rather, Appellant makes this request for the first time on appeal within an assignment of error challenging the weight of the evidence.  Therefore, we reject Appellant's request.

{¶62}  Appellant next argues that Dr. Mack's testimony did "not exclude a non-accidental injury" under the first prong in R.C. 2151.031(D), which, as stated, defines an "abused child" as one "who . . . [e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means."  According to Appellant, Dr. Mack never "definitive[ly]" opined that an accident caused R.R.'s injuries.  Instead, Dr. Mack opined that there was no evidence of significant force, and she offered no opinion as to whether R.R.'s injuries were non-accidental.

{¶63}  Appellant's argument misapprehends its burden of proof in the trial court.  "In an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the requisite burden of proof is by clear and convincing evidence."  *In re Anthony*, 2003-Ohio-5712, ¶ 16 (11th Dist.); *see* Juv.R. 29(E)(4).  Therefore, to prove the first prong, Appellant was required to "'produce in the mind of the trier of facts a firm belief or conviction'" that R.R.'s injuries were non-accidental.  *In re Anthony* at ¶ 16, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.  Dr. Mack's testimony, if believed, cast doubt on the accuracy of Dr. Welko's medical opinion that R.R.'s injuries were non-accidental.  However, Dr. Mack had no obligation to present a definitive, contrary opinion.  Further, Dr. Dehnel *did* definitively opine, "to the highest degree of medical certainty," that R.R.'s injuries "were not nonaccidental trauma."

Case No. 2025-P-0074

{¶64} Appellant next argues that the trial court "wrongly" assigned substantial weight to Dr. Mack's longer estimated timeline for when R.R.'s injuries may have occurred. According to Appellant, "[t]he timeline of the injuries is irrelevant to a finding of abuse" under R.C. 2151.031(D).

{¶65} Appellant's argument misapprehends the import of Dr. Mack's testimony. According to Dr. Mack, Dr. Welko misstated the scientific literature that she cited in support of her estimated timeline. Therefore, Dr. Mack's testimony, if believed, cast doubt on Dr. Welko's credibility.

{¶66} Appellant next argues that the trial court "ignored" the alternative prong in R.C. 2151.031(D), which, as stated, defines an "abused child" as one "who . . . [e]xhibits evidence of . . . an injury or death which is *at variance with the history given of it*." (Emphasis added.) According to Appellant, the parties and witnesses agreed that R.R.'s medical records from Cincinnati Children's Hospital did not show rib fractures. In addition, the respondents testified that they had no prior knowledge of those injuries.

{¶67} The trial court quoted the alternative prong but did not specifically discuss it in its analysis. Our review of the hearing transcript, however, demonstrates that Appellant also did not specifically address the second prong. Rather, Appellant's case-in-chief focused on the first prong—whether R.R.'s "physical . . . injury" was "inflicted other than by accidental means"—which we have addressed above. This is most likely because, as Appellant acknowledges, the respondents gave *no* explanation for R.R.'s rib fractures. *See, e.g., Anthony*, 2003-Ohio-5712, at ¶ 2, 19 (11th Dist.) (appellant claimed that child's broken leg was caused by a sibling jumping on it); *In re T.M.W.*, 2011-Ohio-

Case No. 2025-P-0074

4303, ¶ 20 (11th Dist.) (appellant claimed that child's injuries occurred "in the course of her attempting to restrain" the child).  Therefore, we find no error.

{¶68}  Accordingly, the trial court did not err by dismissing Appellant's allegations of abuse.

### B.  Neglect

{¶69}  Appellant's complaint alleged that R.R. was a "neglected child" under R.C. 2151.03(A)(2), which is a "child . . . [w]ho lacks adequate parental care because of *the faults or habits* of the child's parents, guardian, or custodian."   (Emphasis added.) Appellant also alleged that R.R. was a "neglected child" under R.C. 2151.03(A)(6), which is a "child . . . [w]ho, because of *the omission* of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare[.]"  (Emphasis added.)

{¶70}  As stated, the trial court dismissed Appellant's neglect allegations for insufficient evidence at the conclusion of Appellant's case-in-chief.  Appellant argues that the trial court erred in dismissing the allegation under subsection (A)(6).  According to Appellant, "[t]he trial court dismissed that allegation solely with citations related to" subsection (A)(2) but "provided no rationale or analysis for dismissing" subsection (A)(6); instead, the court "seemingly conflated both code sections."

{¶71}  The record does not support Appellant's assertions.  The trial court did not cite the statute at the hearing or in its entry in dismissing Appellant's neglect allegations for insufficient evidence.  Therefore, Appellant's argument is factually incorrect.

{¶72}  Appellant next argues that the "omission" for purposes of subsection (A)(6) was that R.R. "was not provided adequate care to 'ensure [his] health and physical

Case No. 2025-P-0074

safety,'" quoting R.C. 2151.011(B)(1). According to Appellant, even if R.R.'s injuries were accidental, "the only conclusion left" is that R.R. "was given inadequate parental care that allowed him to injure himself."

{¶73} Appellant's argument is legally flawed. R.C. 2151.011(B)(1), the statutory provision from which Appellant quotes, sets forth the definition of "adequate parental care." That phrase is used in the separate definition of "neglected child" under subsection (A)(2), and Appellant concedes that it did not prove that subsection. The phrase is not used in the definition of "neglected child" under subsection (A)(6).

{¶74} Accordingly, the trial court did not err by dismissing Appellant's allegations of neglect.

### C. Dependency

{¶75} Appellant's complaint alleged that R.R. was a "dependent child" under R.C. 2151.04(C), which is a "child . . . [w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"[2]

{¶76} Appellant "reasserts" its above arguments and states that since it proved R.R. is an abused and neglected child, then R.R. is necessarily a dependent child. Since we have found no merit to Appellant's abuse and neglect arguments, we also find no merit to this argument.

{¶77} Appellant next argues that even if the "testimony from the opposing parties is entirely true," then R.R. would still be dependent based on the intensity of his medical needs. According to Appellant, if the Adams "provided perfect and attentive around-the-

---

2. Appellant's complaint also alleged that R.R. was a "dependent child" under R.C. 2151.04(B), which is a "child . . . [w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]" Appellant concedes that it did not prove R.C. 2151.04(B).

Case No. 2025-P-0074

clock care," and if R.R.'s "underlying medical issues resulted in the spontaneous infliction of eight fractured ribs in different areas of his chest cavity," then R.R.'s "condition is such to find him dependent."

{¶78} We reject Appellant's argument. No one suggested that R.R.'s injuries occurred "spontaneous[ly]." Rather, based on R.R.'s complex medical conditions, his medical history, and the strength of the respondents' opposing evidence, the trial court reasonably concluded that Appellant did not meet its burden of proving, by clear and convincing evidence, that it was in R.R.'s interest for the State to assume his guardianship.

{¶79} Finally, Appellant asks this Court to "follow the reasoning" in *In re Savchuk Children*, 2008-Ohio-6877 (11th Dist.), and reverse the trial court's dismissal of its dependency allegations. Appellant misapprehends *Savchuk*'s holding. In *Savchuk*, the parents challenged the trial court's finding that their children were dependent. *Id*. at ¶ 53, 54. We found that the evidence supported the trial court's finding. *See id*. at ¶ 59. Here, Appellant challenges the trial court's finding that R.R. was *not* dependent. Consistent with *Savchuk*, we find that the evidence supported the trial court's finding.

{¶80} Accordingly, the trial court did not err by dismissing Appellant's allegations of dependency.

{¶81} Appellant's second assignment of error is without merit.

Case No. 2025-P-0074

{¶82} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.


EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this Court, Appellant's assignments of error are without merit.  It is the judgment and order of this Court that the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

Costs to be taxed against Appellant.


_____
JUDGE JOHN J. EKLUND


_____
JUDGE EUGENE A. LUCCI,
concurs


_____
JUDGE ROBERT J. PATTON,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-P-0074